NANCY ANN BIVINS, *et al. v.* NEEDHAM JARNIGAN, *et al.*

1. DEEDS. *Undue influence. What will constitute.* Where a woman possesses the influence of a mistress over an old and afflicted man, rapidly approaching his grave, who is urged by his family to return home, but under her influence refuses to do so, and when greatly prostrated, makes a deed, conveying a large part of his property to her, the Court says: "We think, in such cases, there does arise a strong presumption that the deed was obtained by an undue influence and power the woman had obtained over him," and for the reason set the deed aside.

   Cases cited: Dean and Wife *v.* Negley, Sup. Court of Penn. Law Reg. for 1862.

2. SAME. *Same. Evidence.* Upon the question of undue influence the Court says: We are inclined to hold, that the same amount of proof of actual fraudulent practices ought not to be required in a case of this character.

Nancy Ann Bivins, *et al. v.* Needham Jarnigan, *et al.*

3. SAME. *Same. Illegal and immoral consideration.* A deed conveying property in consideration of *past* cohabitation will not be set aside where the conveyee is in possession under the same.

Cases cited: Johnson *v.* Cooper and Crosswhite, 2 Yerg., 523; Rucker *v.* Wynne, 2 Head, 617; Story Eq. Jur. §§296–9; Chitty on Con., 660.

## FROM RUTHERFORD.

Appeal from the Chancery Court. JNO. P. STEELE, Chancellor.

JNO. W. BURTON for Nancy Bivins.

PALMER & RICHARDSON for Jarnigan.

McFARLAND, J., delivered the opinion of the Court.

Lewis Bivins, after living for many years in Rutherford county, with the complainant, Nancy Ann, as his wife, and a family of children, began to frequent the house of Clara Clark, an unmarried woman, who for several years lived upon a tract of land belonging to said Bivins, lying a few miles from his residence. Their intercourse was of an adulterous character, and began many years before his death, and for the last year or two of his life he abandoned his own home and family, and made his home at the house of said Clara Clark. Some ten or eleven months before his death, which occurred in February, 1864, he became sick and badly diseased. His disease was of an offensive and loathsome character. He remained in the house of Clara Clark during this time, and until his death, and was attended to and waited upon by her.

A few months before his death, on the 29th September, 1863, he executed a deed conveying to Clara Clark the tract of land upon which she had been living, containing about one hundred and sixteen acres. The deed, upon its face, purports to be a deed of gift in consideration of love and affection, " and in consideration of her (Mrs. Clark's) attention and kindness. to me in my ill-health." Said Lewis was, at the time, the owner of another tract of about 200 acres, where his family resided.

After the death of Lewis Bivins, this bill was filed by his widow and a portion of his heirs, to have this deed delivered up and cancelled, upon two grounds : 1st, that the real consideration for the conveyance was the unlawful and adulterous intercourse between said Lewis and Clara Clark, and upon grounds of public policy, it is maintained the deed should be cancelled ; and 2d, upon the ground that the deed was obtained by undue influence and fraud.

The defendants in their answers, say, they do not admit that complainant, Nancy Ann, and said Lewis, have ever been lawfully married, but we think the fact is established. The answer is not upon the professed knowledge of the defendants, and they do not aver positively, that they believe the statement that they were never married, to be true. The proof is, that the parties moved from North Carolina to Rutherford county, many years ago ; that they lived together, and recognized each other as husband and wife, and were so received and recognized by their neighbors ; that they

raised a family of children; and there is nothing in their conduct to raise any doubt on the question.

Are the complainants entitled to the relief prayed for, on the ground that the deed was executed upon an illegal and immoral consideration? The authority upon which this is asked, is the principle announced by this Court in the cases of *Johnson* v. *Cooper and Crosswhite*, 2 Yer., 523, and *Rucker* v. *Wynne et al.*, 2 Head, 617, in which it was held that the Court would at the instance of one of the parties, order gaming securities delivered up and cancelled, notwithstanding the parties seeking the relief were *particeps criminis*. The Court said that the relief would be granted upon grounds of public policy, without regard to who was the complaining party before the Court; "that the only effectual method of discouraging gaming and carrying out the policy of the law, is to remove temptation, by denying to the offender the profits of his violation of the law." We are aware of no case in our State, in which this doctrine has been applied to a case like the present. It is very well settled by authority, that all the agreements, bonds or securities given as a price for future illicit intercourse, are incapable of enforcement. Story Eq. J., §296. But these authorities seem to keep up a distinction between contracts made in consideration of future illicit intercourse, and those made in consideration of past cohabitation. Chitty on Contracts, pp. 660, and authorities there cited. This distinction certainly rests on a solid foundation in cases where the female has been seduced,

and the contract is to remunerate her for the injury thus sustained. As with us, this would be to satisfy a legal demand. Whether this is applicable to all cases of past cohabitation we do not say.

Judge Story says, even in cases of *premium predicitiæ* the distinction has been constantly maintained between bills for restraining the woman from enforcing the security given, and bills for compelling her to give up property already in her possession under the contract. At least there is no case to be found, where the contrary doctrine has been acted upon, except where creditors are concerned." §299.

The facts of this case are, that, at the time this deed was made, said Bivins was greatly prostrated in body, and had been for some time previous; and at the time he made the deed, it was apparent that his sickness would terminate fatally, and the proof indicates that this was well known to him, and that the deed was made in view of his approaching dissolution. In the month of June, previous, he had sent for a minister to administer to him the ordinance of baptism. It can hardly be said, therefore, that this deed was executed in consideration of future adulterous intercourse.

The proof shows that said Clara, in attending to Bivins, and waiting upon him in his last sickness, rendered valuable services, and if we could separate this from the fact of their previous long adulterous intercourse, her claim. upon Bivins for compensation would be meritorious. But viewing her attention to

him in view of their previous intercourse, and in view of proof going to show that she opposed his returning to his family, it is divested of much of the merit it would otherwise have.

We could not resist the conclusion, that Bivins was not moved to make the deed alone in consideration of the services of said Clara in attending to him in his sickness; for, in reality, it· is apparent that he had probably supported her for years; but that in fact their past intimate relations had given her such a place in his affections as to make this the controlling motive. But upon the authorities we have quoted, conceding this to be so, we cannot set the deed aside upon this ground. She is in possession under the deed. The law does not compel her to restore property thus obtained. Upon the same principle that it is sought to compel her to restore the land, she might be compelled to restore all other property given her by Bivins during their intercourse.

This could not be done. We fully recognize the duty of the Court to enforce, by all proper means, the policy of the law against immorality of this character, but the authorities do not go to the length claimed.

The case, then, remains to be determined alone upon the question, whether this deed was obtained by undue influence upon the part of Mrs. Clark. It can admit of no doubt that at the time this deed was made Mrs. Clark possessed very great influence over Bivins That he abandoned his own family, and refused to return to them, when urged to do so by one of his sons

and a grandson, and also by his spiritual adviser, who urged this upon him as an important step for his spiritual welfare, all goes to show this. He preferred to remain and die with her, even in the face of the strong appeals made to him. He said, often, that he could not be attended to and waited upon at home, but we are inclined to think that there was no ground for this, but these excuses were made rather to justify what he himself felt was, otherwise, inexcusable conduct. Perhaps these things were suggested by some one else. In view of his prostrate condition, and the attending circumstances, it is apparent that her influence over him was controlling.

The question, then, is, did she exercise this influence in obtaining this deed? The proof of facts, showing active measures upon her part, in this direction, is not so strong as in many cases. We are inclined to hold, that the same amount of proof of actual fraudulent practices ought not to be required in a case of this character. What passed between them cannot be known, but we see the result.

Although it is in proof, that, when he was urged by the minister to return to his family, and she was consulted, she expressed a willingness that he should do so, if necessary for his peace of mind; yet we think the weight of proof is, that she opposed his returning to his family, saying at one time, with a good deal of feeling and earnestness, that he should not go—that she would wade in blood before they should have him. This was said to his son, who came to get

him to go home.   It appears that she, in person, with another woman, visited the house of an attorney, and procured the deed to be written, and procured the attendance of witnesses.   It is true there is proof that all this was by the direction of Bivins, but this is of little consequence, as it is not inconsistent with the theory that she directed him in all this.

Here is the case of a woman possessing the extraordinary influence of a mistress over an old, and at this time, afflicted man, rapidly approaching his grave.   He is urged by his family and minister to return to his home, and he was certainly moved to this by high moral and religious considerations.   Yet under her influence, as we think, he refuses to do so, and remains with her and entirely under her influence until his death; and during this time, and when greatly prostrated, he makes to her a deed conveying a large part of all he possesses, to the exclusion of his lawful wife and children; when, as we think, she had been fully compensated for all lawful and proper services rendered for him.   We think, in such case, there does arise a strong presumption that the deed was obtained by an undue exercise of the influence and power the woman had obtained over him.   This conclusion is sustained by the case of *Dean and Wife* v. *Negley,* by the Supreme Court of Pennsylvania, reported in Law Register of 1862.   We think the conveyance resulted from the fact, that, during the time Bivins was left entirely under the control and influence of Mrs. Clark. Had he been permitted to return to his family, it

19—vol. 3.

would hardly have been made. Upon this ground we affirm the Chancellor's decree in favor of complainants, with costs.